UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

XAVIER PUCHA QUITUIZACA,

　　　　　Petitioner,

　　　v.　　　　　　　　　　　　　　　20-CV-403
　　　　　　　　　　　　　　　　　　　DECISION & ORDER
WILLIAM P. BARR, et al.,

　　　　　Respondents.

───────────────────────────────


　　　　Xavier Pucha Quituizaca has been detained in United States Immigration and

Customs Enforcement custody since October 11, 2018—more than 20 months.  Docket

Item 4-1 at 4.  On April 3, 2020, Pucha Quituizaca filed a *pro se* petition for a writ of

habeas corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the

Buffalo Federal Detention Facility in Batavia, New York.  Docket Item 1.  On May 22,

2020, the respondents answered the petition, Docket Items 4 and 5; and on June 2,

2020, Pucha Quituizaca replied, Docket Item 6.

　　　　For the reasons that follow, this Court grants Pucha Quituizaca's petition in part.

## **FACTUAL AND PROCEDURAL BACKGROUND**

　　　　The following facts, taken from the record, come largely from filings with the

United States Department of Homeland Security ("DHS"), Immigration and Customs

Enforcement ("ICE").

　　　　Pucha Quituizaca is a native and citizen of Ecuador.  *See* Docket Item 1 at 2;

Docket Item 4-2 at 4.  He entered the United States on an unknown date and at an

unknown location without inspection.  Docket Item 4-1 at 3-4.

On October 11, 2018, Pucha Quituizaca was arrested by ICE officers and served with a "Notice to Appear," charging that he was subject to removal under 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without having been admitted or paroled into the country.  *See* Docket Item 4-2 at 15.  That same day, DHS also served Pucha Quituizaca with a "Notice of Custody Determination," informing him that he would be detained by DHS "pending a final administrative determination in [his] case."  *Id.* at 17.  Pucha Quituizaca requested a hearing before an Immigration Judge ("IJ") to request release, *see id.*, but he withdrew that request, through counsel, on December 12, 2018, *see id.* at 20.

On December 28, 2018, Pucha Quituizaca again requested a bond hearing before an IJ.  Pucha Quituizaca appeared before an IJ on January 10, 2019.  At the request of Pucha Quituizaca 's counsel, the IJ issued an order indicating that "no action" was taken on his request.  *See id.* at 21; Docket Item 4-3 at 3.  So it appears that for some reason at his attorney's request, Pucha Quituizaca never was given a statutory bond hearing.

In December 2018, Pucha Quituizaca applied for relief from removal.  *See* Docket Item 4-2 at 24.  On May 31, 2019, an IJ denied Pucha Quituizaca's relief application and ordered him removed to Ecuador.  *See id.* at 22; *id.* at 24-30.  Pucha Quituizaca appealed the denial to the Board of Immigration Appeals ("BIA"), which dismissed the appeal on October 11, 2019.  *Id.* at 33-39.  Ten days later, Pucha Quituizaca petitioned the United States Court of Appeals for the Second Circuit to review the BIA's decision.  *See Pucha Quituizaca v. Barr*, No. 19-3470, Docket Item 1 (2d Cir. 2019).  Pucha Quituizaca also moved to stay his removal.  *See Pucha*

*Quituizaca*, 19-3470, Docket Items 5, 14, 26, and 36.   Both the petition and motion to stay remain pending.

On April 1, 2020, Robert F. Judge, Deputy Field Office Director, Buffalo, New York, determined that Pucha Quituizaca would remain detained pending his removal because he posed a danger to the community and a risk of flight.  *See* Docket Item 4-2 at 45-48.  Judge cited Pucha Quituizaca's arrests for driving while impaired, resisting arrest, and disorderly conduct, as well as the fact that Pucha Quituizaca "ha[d] provided no evidence of family ties, no evidence of equities, [and no evidence of] community ties and/or non-governmental sponsors within the United States."  *Id.* at 45-46.  Pucha Quituizaca then requested a personal interview to challenge Judge's determination, *id.* at 47, and that interview took place on April 14, 2020.  On May 13, 2020, Annette Joseph, Chief of the ICE Removal and Internal Operations Unit ("RIOU"), determined that Pucha Quituizaca would remain in custody pending his removal because "ICE [was] unable to conclude that the factors set forth in 8 C.F.R. § 241.4(e)[1] h[ad] been satisfied."  *Id.* at 54.

Pucha Quituizaca has been in DHS custody for nearly 20 months.

---

[1] Section 241.4 provides:

Before making any recommendation or decision to release a detainee, . . . the [RIOU director] . . . must conclude that:

(1) Travel documents for the [detainee] are not available or . . . immediate removal, while proper, is otherwise not practicable or not in the public interest;

(2) The detainee is presently a non-violent person;

(3) The detainee is likely to remain nonviolent if released;

(4) The detainee is not likely to pose a threat to the community following release;

## DISCUSSION

### I. HABEAS PETITION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3). The government maintains that Pucha Quituizaca is validly detained under 8 U.S.C. § 1231(a) as a noncitizen subject to a final order of removal. Docket Item 4 at 12.

Pucha Quituizaca disagrees on three grounds. First, he contends that his detention for over six months is "unlawful and contravenes 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas* [*v. Davis*, 533 U.S. 678, 701 (2001)]." Docket Item 1 at 3. The Court construes Pucha Quituizaca's first claim as arguing that his continued detention violates 28 U.S.C. § 1231(a)(6) because there is "good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future."[2] *See Zadvydas*, 533 U.S. at 701. Second, Pucha Quituizaca argues that his "indefinite" detention violates his right to substantive due process under the Fifth Amendment of the United States Constitution. Docket Item 1 at 4. And third,

(5) The detainee is not likely to violate the conditions of release; and

(6) The detainee does not pose a significant flight risk if released.

8 C.F.R. § 241.4(e).

[2] Because Pucha Quituizaca is proceeding *pro se*, this Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

he argues that his detention without "a timely and meaningful opportunity to demonstrate that [he] should not be detained" violates his right to "procedural due process" under the Fifth Amendment. *Id.*

## II. STATUTORY CHALLENGE

This Court begins by considering the statutory basis for Pucha Quituizaca's detention in order to evaluate his first challenge, alleging that his continued detention violates 8 U.S.C. § 1231 as interpreted by the Supreme Court in *Zadvydas*, 533 U.S. at 701. The government and Pucha Quituizaca seem to agree that Pucha Quituizaca's detention is governed by 8 U.S.C. § 1231(a). *See* Docket Item 1 at 2; Docket Item 4 at 12. But this Court disagrees and finds that Pucha Quituizaca's detention is governed by 8 U.S.C. § 1226(a).

"Broadly speaking, section 1226 governs the detention of immigrants who are not immediately deportable." *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018). Section 1231, on the other hand, "addresses the 'removal period' for immigrants facing deportation." *Id.* at 53. "[T]he 'removal period' [is] the term used in the statute to describe the 90-day period following an order of removal during which 'the Attorney General shall remove the [noncitizen].'" *Id.* at 54 (quoting 8 U.S.C. § 1231(a)(1)(A)).

> The statute explicitly defines the beginning of the removal period as occurring "on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.
>
> (iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement."

*Id.* at 54-55 (quoting 8 U.S.C. § 1231(a)(1)(B)).

Pucha Quituizaca has asked the Second Circuit to review the BIA's decision and to stay his removal the.  *See Pucha Quituizaca*, No. 19-3470, Docket Item 1 (2d Cir. 2019).  Under DHS's forbearance agreement with the Second Circuit, "DHS will not remove a [noncitizen] who has requested a stay of removal with a petition for review of an immigration order of removal unless a government motion opposing the stay is granted by the court or the [noncitizen's] stay motion is otherwise denied."  *Sankara v. Whitaker*, 2019 WL 266462, at *4 (W.D.N.Y. Jan. 18, 2019).  This Court accordingly has held that until a Second Circuit panel rules on an immigrant's request for a stay of his removal, the "forbearance agreement amounts to a court ordered stay of the removal of the [noncitizen]."  *See Hemans v. Searls*, 2019 WL 955353, at *3 (W.D.N.Y. Feb. 27, 2019); *Sankara*, 2019 WL 266462, at *4.  In other words, this Court construes the forbearance agreement as effectively rendering Pucha Quituizaca's removal stayed under 8 U.S.C. § 1231(a)(1)(B)(ii).  Therefore, Pucha Quituizaca is detained under section 1226.

Because Pucha Quituizaca is not detained under section 1231(a), this Court rejects his argument that his detention violates that provision as interpreted by the Supreme Court in *Zadvydas*.

### III. DUE PROCESS

Pucha Quituizaca also alleges that his continued detention violates the Due Process Clause.  *See* Docket Item 1 at 4.  The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of . . . liberty . . . without due process of law."  U.S. Const. amend. V.  The Supreme Court "has held that the Due

Process Clause protects individuals against two types of government action." *United States v. Salerno*, 481 U.S. 739, 746 (1987). "So-called 'substantive due process' prevents the government from engaging in conduct that shocks the conscience, . . . or interferes with rights implicit in the concept of ordered liberty." *Id.* (citations omitted). "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *Id.* "This requirement has traditionally been referred to as 'procedural' due process." *Id.*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and narrow nonpunitive circumstances, . . . where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (emphasis in original) (citations omitted). Other than those unique, special, and narrow circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty. That promise stands as one of the Constitution's most vital protections against arbitrary government." *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019).

"[Noncitizens], even [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth . . . Amendment[ ]." *Plyer v. Doe*, 457 U.S. 202, 210 (1982); *see also Shaughnessey v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1954) ("It is true that [noncitizens] who

have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.").  At the same time, Congress has "broad power over naturalization and immigration, [permitting it to] make[ ] rules that would be unacceptable if applied to citizens."  *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

### A.    Substantive Due Process

Pucha Quituizaca argues that his detention violates his right to substantive due process.  Docket Item 1 at 4.  He has been in DHS custody since October 11, 2018—over 20 months.  *See* Docket Item 4-2 at 17.  But this Court cannot say that detention that long violates due process.  *See Sanusi v. I.N.S.*, 100 F. App'x 49, 51 (2d Cir. 2004) (summary order) (determining that six-year detention did not violate due process).  Indeed, detention under section 1226 may serve the government's compelling interests in both "preser[ving] the government's ability to later carry out its broader responsibilities over immigration matters," *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991), and preventing crime by arrestees who pose a danger to the safety of the community, *see Salerno*, 481 U.S. at 749.  Although there comes a time when the length of a noncitizen's detention pending removal violates due process regardless of the procedural protections afforded, *see Salerno*, 481 U.S. at 747 n.4, that time has not yet come here.

### B.    Procedural Due Process

Pucha Quituizaca also challenges the procedural safeguards that apply to his continued detention.  Docket Item 1 at 4.  The Due Process Clause is not offended by

8

the mandatory detention of noncitizens for the "*brief period necessary* for their removal proceedings," *Demore*, 538 U.S. at 513 (emphasis added), but may be violated by detention beyond that "brief" period, depending on the balance of the individual's and the government's interests, *see, e.g.*, *id.* at 532 (Kennedy, *J.*, concurring) ("[A] lawful permanent resident . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention bec[omes] unreasonable or unjustified."); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances.").

For that reason, this Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry," *Hemans*, 2019 WL 955353, at *5. "A[t] the first step, the Court considers whether the [noncitizen's] detention has been unreasonably prolonged." *Id.* "If it has not, then there is no procedural due process violation." *Id.* "But if it has, the Court proceeds to step two and 'identifies the specific dictates of due process' by considering the *Mathews v. Eldridge* factors." *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). "If the government has not provided the procedural safeguards dictated by the *Mathews* factors to a [noncitizen] subject to unreasonably prolonged detention, then his continued detention violates procedural due process." *Id.*

### 1.    Pucha Quituizaca's Detention

"[W]hen weighing the lawfulness of continued detention of a [noncitizen] under the Due Process Clause," several factors determine whether detention is unreasonably prolonged. *Jamal A. v. Whitaker*, 2019 WL 549722, at *3 (D. Minn. Jan. 22, 2019). This

Court, for example, has considered "(1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the parties; and (4) the likelihood that the removal proceedings will result in a final order of removal." *Hemans*, 2019 WL 955353, at *6.

First, and most important, courts consider the length of detention.  Pucha Quituizaca has been in DHS custody since October 1, 2018—more than 20 months. *See* Docket Item 4-2 at 17.  "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Muse v. Sessions*, 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018) (and cases cited therein). In fact, courts have found detention even shorter than a year to be unreasonably prolonged as part of procedural due process analysis.[3]

In *Demore*, the Supreme Court upheld the constitutionality of detention under section 1226(c), relying on the "very limited time of . . . detention at stake" and noting that "in the majority of cases[, section 1226(c) detention] lasts less than the 90 days . . . considered presumptively valid in *Zadvydas*." *Demore*, 538 U.S. at 529 & n.12; *see also id.* ("[I]n 85% of the cases in which [noncitizens] are detained pursuant to [section] 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days.  In the remaining 15% of cases, in which the [noncitizen]

---

[3] *See, e.g.*, *Vargas v. Beth*, 2019 WL 1320330, at *8 (E.D. Wis. Mar. 22, 2019) ("approximately nine and a half months"); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) ("over seven months" and "over nine months" by the next removal-related hearing); *Hernandez v. Decker*, 2018 WL 3579108, at *1, *12 (S.D.N.Y. July 25, 2018) (nine months); *Sajous v. Decker*, 2018 WL 2357266, at *1, *12 (S.D.N.Y. May 23, 2018) (over eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 720 (D. Md. 2016) (exceeding ten months); *see also Sopo v. U.S. Attorney General*, 825 F.3d 1199, 1218 (11th Cir. 2016) ("[A] criminal [noncitizen's] detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case.").

appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." (citations omitted)).

Pucha Quituizaca's 20-month detention far exceeds the four-month average cited in *Demore*. The length of Pucha Quituizaca's detention therefore supports his argument that his detention without an individualized bond hearing has been unreasonably prolonged.

Second, courts consider the conditions of detention. Whether "the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention" factors into the reasonableness of Pucha Quituizaca's detention. *Sajous v. Decker*, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018). "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Muse*, 2018 WL 4466052, at *5. Neither the petitioner nor the respondents have provided information about the conditions at BFDF, so this factor does not favor either party.

Third, courts consider whether the detainee has prolonged his own detention. The Second Circuit has found that this factor weighs against finding detention unreasonable when a noncitizen has "substantially prolonged his stay by abusing the processes provided to him" but not when "an immigrant . . . [has] simply made use of the statutorily permitted appeals process." *Hechavarria*, 891 F.3d at 56 n.6 (first quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)). As the Sixth Circuit has noted, "appeals and petitions for relief are to be expected as a natural part of the process. A [noncitizen] who would not normally be subject to indefinite detention cannot be so

11

detained merely because he seeks to explore avenues of relief that the law makes available to him." *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) (cited in *Hechavarria*, 891 F.3d at 56 n.6).  Indeed,

> although a [noncitizen] may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take.  The mere fact that a [noncitizen] has sought relief from deportation does not authorize the [government] to drag its heels indefinitely in making a decision.  The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.

*Id.*

Here, DHS took Pucha Quituizaca into custody in October 2018.  Docket Item 4-2 at 17.  Pucha Quituizaca sought relief from removal two months later, in December 2018.  *See* Docket Item 4-3 at 2.  According to the declaration of a DHS employee, the IJ then adjourned Pucha Quituizaca's December 2018 removal hearing until April 2019 "to allow Mr. Pucha Quituizaca time to supplement his application for relief from removal."  *Id.* at 2-3.  That April 2019 hearing was adjourned twice more—the first time for ten days "to allow Mr. Pucha Quituizaca time to complete a records/fingerprint check and also to allow Mr. Pucha Quituizaca and [DHS] to file briefs," and the second time for ten days "due to malfunction of the televideo,"  *Id.* at 3.  The removal hearing ultimately was held in May 2019, and the IJ ordered Pucha Quituizaca removed to Ecuador.  Docket Item 4-2 at 22; *id.* at 24-30.  One week later, Pucha Quituizaca appealed that decision to the BIA.  Docket Item 4-3 at 3.  The BIA dismissed the appeal four months later, in October 2019.  *Id.* at 33-39.  Within ten days of that dismissal, Pucha Quituizaca petitioned the Second Circuit to review the BIA's decision.  *See Pucha Quituizaca v. Barr*, No. 19-3470, Docket Item 1 (2d Cir. 2019).  That petition remains pending.

Although Pucha Quituizaca has caused some of the delay, he has not "abus[ed] the processes provided to him." *See Hechavarria*, 891 F.3d at 56 n.6 (quoting *Nken*, 556 U.S. at 436).  He has adjourned hearings to collect and submit evidence; otherwise, he has done nothing more than challenge his removal and appeal the IJ's decision to the BIA and then to the Second Circuit.  The government decision makers, in contrast, collectively are responsible for over twelve months of delay.  Therefore, the third factor weighs in Pucha Quituizaca's favor.

Finally, courts consider the likelihood that the removal proceedings will result in a final order of removal.  This Court declines to weigh the merits of Pucha Quituizaca's claims pending before the Second Circuit.

After balancing all these factors, this Court finds that Pucha Quituizaca's detention has been unreasonably prolonged.  Therefore, this Court turns to the second step of the two-part inquiry to determine what remedy his unreasonably-prolonged detention demands.

### 2.    The Process Due to Pucha Quituizaca

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *id.* at 335, namely: "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake." *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017).  Here, that analysis leads to the conclusion that Pucha Quituizaca's continued detention without an individualized

hearing, at which the government must justify his continued detention by clear and convincing evidence, fails to "comport with the 'fundamental fairness' demanded by the Due Process Clause."  *See Schall v. Martin*, 467 U.S. 253, 263 (1984).

Pucha Quituizaca's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity."  *Addington v. Texas*, 441 U.S. 418, 427 (1979).  Pucha Quituizaca has an obvious interest in his "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint."  *Zadvydas*, 533 U.S. at 690.  Moreover, while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (emphasis in original), Pucha Quituizaca has not conceded his deportability, and the resolution of that issue remains pending before the Second Circuit.  In fact, his interest in liberty *in the United States* must indeed be strong for him to subject himself to unreasonably-prolonged detention while contesting his deportability.  *See Fremont v. Barr*, 2019 WL 1471006, at *6 n.7 (W.D.N.Y. Apr. 3, 2019).

And there appears to be good reason for that strong interest.  Pucha Quituizaca claims that his sister, as well as his nieces, a cousin, and his brother-in-law, are United States citizens.  *See* Docket Item 1 at 3.  These family members live not in Ecuador, where the government wishes to send him, but in the United States, where Pucha Quituizaca himself has lived for about fifteen years.  *See id.*  Thus, if Pucha Quituizaca chose not to challenge his removal, he would "lose the right to rejoin [his] immediate family, a right that ranks high among the interests of the individual."  *Landon*, 459 U.S. at 34.

14

This Court recognizes that the government's interest in detaining Pucha Quituizaca also may be strong. The government contends that Pucha Quituizaca's risk of flight and disregard for the law justify his continued detention. Docket Item 4-2 at 45-46. "The government's interest in preventing crime by arrestees is both legitimate and compelling." *Salerno*, 481 U.S. at 749. And general concerns about the risk of flight highlight the government's compelling interest in preserving its "ability to later carry out its broader responsibilities over immigration matters." *Doherty*, 943 F.2d at 211.

Turning to the procedures used thus far in this case, Pucha Quituizaca received an individualized custody determination, including a personal interview, under 8 C.F.R. § 241.4. *See* Docket Item 4-2 at 45-48; 54. In that proceeding, Pucha Quituizaca bore the burden of "demonstrat[ing] that, if released, [he] w[ould] not . . . [p]ose a danger to the community, to the safety of other persons, or to property[ or p]ose a significant risk of flight pending [his] removal from the United States." *Id.* at 45. The determination was made by a DHS official, rather than by a neutral decision maker such as an IJ. *See id.*

This Court concludes that in light of the procedures used thus far, there is a significant risk that Pucha Quituizaca will be erroneously deprived of his liberty interests. Now that Pucha Quituizaca's detention has become unreasonably prolonged, due process requires *some* opportunity to be heard "at a meaningful time and in a meaningful manner," *Armstrong*, 380 U.S. at 552.

An opportunity to be heard in a meaningful manner necessarily requires a hearing that "satisfies the constitutional minimum of fundamental fairness." *Santosky v. Kramer*, 455 U.S. 745, 756 n.8 (1982) (citation omitted). When the government seeks the civil detention of a person to effect a compelling regulatory purpose, it must show by

clear and convincing evidence that such detention is necessary to serve that compelling interest.  *See Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *Addington*, 441 U.S. at 432-33; *see also Santosky*, 455 U.S. at 756 (explaining that the "clear and convincing evidence" standard applies "when the individual interests at stake in a . . . proceeding are both 'particularly important' and 'more substantial than mere loss of money'" (quoting *Addington*, 441 U.S. at 424)).  That standard applies equally here.

To sustain the prolonged detention of a noncitizen subject to removal proceedings based on its general interests in immigration detention, the "[g]overnment [is] required, in a 'full-blown adversary hearing,' to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person," *Foucha*, 504 U.S. at 81 (quoting *Salerno*, 481 U.S. at 751), or ensure that the noncitizen will appear for any future proceeding.[4]  This requires consideration of less restrictive alternatives to detention.  *See id.*; *cf. United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less restrictive alternative is offered to a" regulation burdening a constitutional right, "it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals.").

Pucha Quituizaca's section 1226(a) detention has been unreasonably prolonged. Because section 1226(a) does not require an individualized hearing in which the government must demonstrate by clear and convincing evidence that no conditions of

---

[4] As this Court explained in *Hemans*, 2019 WL 955353, at *8 n.7, a pretrial detainee's right to a speedy trial distinguishes the interests supporting the evidentiary standard traditionally applicable to flight-risk determinations for pretrial detention purposes from what is required after an unreasonably-prolonged immigration detention.

release can reasonably serve the government's compelling regulatory interests in detaining him,[5] it is unconstitutional as applied to him.  As such, his continued detention violates the Due Process Clause.

Pucha Quituizaca must be released unless, no later than **14 calendar days from the date of this decision and order**, the government demonstrates by clear and convincing evidence before a neutral decision maker that Pucha Quituizaca's continued detention is necessary to serve a compelling regulatory purpose—such as preventing flight or protecting others or the community.  The decision maker also must consider— and must address in any decision—whether there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention, including release on bond in an amount the petitioner can reasonably afford, with or without conditions, that also would reasonably address those same regulatory purposes.

### ORDER

In light of the above, IT IS HEREBY

ORDERED that **within 14 calendar days of the date of this decision and order**, the government must release Pucha Quituizaca from detention unless a neutral

---

[5] As this Court has explained, in "a 'typical' [section] 1226(a) bond hearing, [*the alien*] must prove '*to the satisfaction of the immigration judge*' that he 'does not present a danger' before the immigration judge could even consider whether conditions of supervision might suffice to protect the public."  *Hechavarria v. Sessions*, 2018 WL 5776421, at *7 (W.D.N.Y. Nov. 2, 2018) (emphasis in original) (quoting 8 C.F.R. § 1236.1(c)(8)).  Even assuming that Pucha Quituizaca's attorney erred by withdrawing his request for a section 1226(a) bond hearing, that error is not material to his present constitutional claim because any such hearing would not have met the procedural requirements noted above.

decision-maker conducts an individualized hearing to determine whether his continued

detention is justified; and it is further

ORDERED that at any such hearing, the government has the burden of

demonstrating by clear and convincing evidence that Pucha Quituizaca's continued

detention is necessary to serve a compelling regulatory purpose, such as minimizing

risk of flight or danger to the community.  Whether detention is necessary to serve a

compelling regulatory purpose requires consideration of whether a less-restrictive

alternative to detention would also address the government's interests.  In other words,

the decision maker must find that no condition or combination of conditions of release

can reasonably ensure Pucha Quituizaca's appearance and the safety of the

community—that is, even with conditions, Pucha Quituizaca presents an identified and

articulable risk of flight or a threat to an individual or the community; and it is further

ORDERED that **within 30 days of the date of this decision and order,** the

government shall file an affidavit certifying compliance with this order.  That affidavit

should include a written copy of the IJ's decision.


SO ORDERED.

Dated:          June 15, 2020
                Buffalo, New York


                                          */s/ Hon. Lawrence J. Vilardo*
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE